# No. 25-20339

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Hector Xavier Cortez, Plaintiff - Appellant

V.

Marco Rubio, Secretary, U.S. Department of State, Defendant - Appellee

---

## On Appeal from
United States District Court for the Southern District of Texas

4:25-CV-171

---

### BRIEF OF APPELLANT HECTOR CORTEZ

---

SUBMITTED BY:

Roberto M. Hinojosa
Texas State Bar Number: 24043730
2020 Southwest Fwy. (U.S. 59) Ste. 220
Houston, Texas 77098
(713) 665-5060
Counsel for Appellant

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Marco Rubio, Secretary, U.S. Department of State | Jennifer Bowen of U.S. Department of Justice Washington, DC |
| Marco Rubio, Secretary, U.S. Department of State | Anthony Payne of U.S. Department of Justice Washington, DC |
| Marco Rubio, Secretary, U.S. Department of State | Anna Dichter of U.S. Department of Justice Washington, DC |

| Appellants: | Counsel for Appellants: |
|---|---|
| Hector Cortez | Roberto Hinojosa Houston, TX |

/S/Roberto M. Hinojosa
Attorney of record for Hector Xavier Cortez, Appellant

i

**STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Fed. R. App. P. 34 (a)(1) and 5th Cir. R. 28.2.3, the Appellant respectfully suggests that the Court entertain oral argument in this case. Since the District Court granted the Motion to Dismiss on lack of jurisdiction this Court's intervening case law has clarified previous law. Furthermore, there are a few issues that require clarification and at least one that should be addressed by this Court to give clarity to the lower Courts. The decision in this case will have far reaching consequences on the rights of persons born in the United States and the manner in which those persons born in the United States may proceed with their American passport applications. Furthermore, the decisional process would be significantly aided by oral argument. Accordingly, Mr. Cortez requests an oral argument in order to have the opportunity to clarify any questions by the Fifth Circuit that may have bearing on this case.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS .................................................. i

STATEMENT REGARDING ORAL ARGUMENT ...................................... ii

TABLE OF CONTENTS.............................................................................. iii

TABLE OF AUTHORITIES ....................................................................... iv

JURISDICTIONAL STATEMENT ............................................................. 1

STATEMENT OF THE ISSUES.................................................................. 1

STATEMENT OF THE CASE..................................................................... 3

SUMMARY OF THE ARGUMENT ........................................................... 5

ARGUMENT ............................................................................................... 7

Standard of Review:.................................................................................... 7

I.-　8 U.S.C. § 1503 (a) is not subject to a jurisdictional five-year filing period but is a claim processing rule subject to equitable tolling. See *Sarabia v. Noem*, 149 F.4th 554 (5th Cir. 2025); Santos-*Zacaria v Garland*, 598 U.S. 411(2023) and *Riley v. Bondi*, 606 U.S. 259 (2025).................... 8

　　a.-　8 U.S.C. § 1503 (a)'s five-year filing period is not jurisdictional................................ 8

　　b.-　8 U.S.C. § 1503 (a)'s five-year filing period is a claim processing rule subject to equitable tolling. ................................................ 11

II.-　Hector Cortez's filing was within the five-year filing period of the final administrative denial...................... 13

III.-　No "Final Administrative Denial" Occurred Under § 1503(a), So the Five-Year Limitations Period Never Began................................................................... 15

a.-    If the proper ground was not alleged in the letter denying Cortez' Passport Application—that the ground for denial was that: "he is not a national of the United States,…"—then the five-year period never starts and there is no adequate relief pursuant to 8 USC § 1503(a) but there is an adequate APA claim available. See *Cambranis v. Blinken*, 994 F.3d 457, 464 fn. 7 (5th Cir. 2021), mentioning *Saleh v. Pompeo*, 393 F. Supp. 3d 172, 180 (E.D.N.Y. 2019) without deciding the issue. ........................................................... 166

b.-    Interpreting 8 USC § 1503(a) to mean the "first" final administrative denial for purposes of the five-year statute of limitations, the way that at first glance the Fifth Circuit might have done in *Gonzalez v. Limon*, 926 F.3d 186, 189 (5th Cir. 2019) is an unconstitutional application of the law that is in direct conflict with the Fourteenth Amendment to the U.S. Constitution. *Marbury v. Madison*, 5 U.S. 137, 177-178 (1803) says that when a law created by Congress is in conflict with the Constitution it is the providence of the Courts to resolve the matter and resolve it in favor of the Constitution. However, the Fifth Circuit has clarified that "[w]hen we held in *Gonzalez* that § 1503(a) only permits suits following the first final administrative denial, we did not mean the very first time an appeal could possibly be filed. We sought to prevent duplicative applications for the same relief from reopening the courthouse doors upon denial." See *Sarabia v. Noem*, 149 F.4th 554 (5th Cir. 2025). Limiting *Gonzalez v. Limon* in this way cures the constitutional defect. ......................... 199

c.-    The District Judge erred in in his assertion that it is well established elsewhere that a

denial of a passport for any reason, including "lack of evidence," is "necessarily on the ground" that he "had not proved he was such a national" for the purposes of 8 U.S.C. §1503(a). ...................................................................... 27

IV.    In this case there are "Qualitative Differences" that make *Villarreal Salinas v. Limon*, 549 F.Supp.3d 624 (S.D. Tex. 2021) and *Vasquez v. Pompeo*, 467 F. Supp. 3d 466 (S.D. Tex. 2020) applicable. ................................................. 31

V-    The Constitutional arguments in this case were not addressed by the District Court. This case should also be remanded so that such arguments may be properly addressed by the District Court. ................................................. 355

CONCLUSION ........................................................................ 399

CERTIFICATE OF SERVICE ....................................................... 41

CERTIFICATE OF COMPLIANCE ............................................... 42

# **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Pages**

*Boechler, P.C. v. Comm'r*, 596 U.S. 199 (2022) .........................10, 11

*Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759 (5th Cir. 2011)..............................................................8

*Califano v. Aznavorian*, 439 U.S. 170 (1978) .........................22, 35

*Cambranis v. Blinken*, 994 F.3d 457 (5th Cir. 2021).....................*Passim*

*Chin Chick Ming v. Dulles,* 225 F.2d 849 (9th Cir. 1955).............15, 28, 29, 30

*Gonzalez v. Limon*, 926 F.3d 186 (5th Cir. 2019)..........................*Passim*

*Haig v. Agee*, 453 U.S. 280 (1981)..................................................23, 24, 25

*Harrow v. Dep't of Def.*, 601 U.S. 472 (2024) ............................12

*Hotze v. Burwell*, 784 F.3d 984 (5th Cir. 2015)..........................8

*Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717 (5th Cir. 2004)… ....................................................................29

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990) ................11, 12

*Jaco v. Garland*, 24 F.4th 395 (5th Cir. 2021) .............................8

*Jew Jock Koon v. Dulles,* 139 F. Supp. 205 (S.D. Tex. 1955)......15, 28, 30, 31

*Kent v. Dulles*, 357 U.S. 116 (1958)............................................22, 24, 35

*Lee Wing Hong v. Dulles,* 214 F.2d 753 (7th Cir. 1954) ...............15, 38, 29, 30

*Ling Share Yee v. Acheson*, 214 F.2d 4 (3rd Cir. 1954) ...............13

*Marbury v. Madison*, 5 U.S. 137 (1803)......................................*Passim*

*Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250 (2016)..........................................................................12

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021)..............................21, 22, 27

*Riley v. Bondi*, 606 U.S. 259 (2025) .........................................*Passim*

*Saleh v. Pompeo*, 393 F. Supp. 3d 172 (E.D.N.Y. 2019) .............*Passim*

*Santos-Zacaria v Garland*, 598 U.S. 411(2023).........................1, 8

*Sarabia v. Noem*, 149 F.4th 554 (5th Cir. 2025).........................*Passim*

*Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145 (2013) ...........11

*Tristan v. United States Dep't of State*, No. 4:25 CV 255 JMB, 2025 U.S. Dist. LEXIS 204194 (E.D. Mo. 2025) ..............34

*U.S. Army Corps of Eng'rs v. Hawkes Co.,* 578 U.S. 590 (2016) .

*United States v. Palazzo, M.D.*, 558 F.3d 400 (5th Cir. 2009) ......16

*United States v. Arrieta*, 862 F.3d 512 (5th Cir. 2017)..................8

*Vasquez v. Pompeo*, 467 F. Supp. 3d 466 (S.D. Tex. 2020).........7, 31, 32

*Villarreal Salinas v. Limon*, 549 F.Supp.3d 624 (S.D. Tex. 2021). ..................................................................................7, 31, 32

*Yung Jin Teung v. Dulles,* 229 F.2d 244 (2nd Cir.1956)...............15, 28, 29, 30

vi

**Constitution** **Pages**

U.S. CONST. art. III, sec. 1 ......................................................38
U.S. CONST. art. III, sec. 2 ......................................................39
U.S. CONST. Amend. V..............................................22, 35, 36
U.S. CONST. Amend. XIV .......................................................36

**Statutes and Regulations** **Pages**

5 U.S.C. § 702..........................................................................18
5 U.S.C. § 704..........................................................................18
8 U.S.C. § 1252(b)(1)...............................................................10
8 U.S.C. § 1503 (a) ..........................................................*Passim*

22 C.F.R. § 51.60 (a)(2)..........................................4, 30, 32, 33
22 C.F.R. § 53.1(a)...........................................................20, 37
22 C.F.R. § 53.2 ...............................................................20, 37
22 U.S.C. § 211a.........................................20, 23, 24, 37

Fed. R. App. P. 34 (a)(1).............................................................ii
5th Cir. R. 28.2.1 ........................................................................i
5th Cir. R. 28.2.3 .......................................................................ii

**Other Authorities** **Pages**

Antonin Scalia & Bryan A. Garner, *Reading Law* (2012)............10, 17, 18

## JURISDICTIONAL STATEMENT

Mr. Cortez appeals a final judgment for the United States District Court for the Southern District of Texas Houston Division—a "Memorandum Opinion and Order", granting the Appellee's Motion to Dismiss and thereby dismissing the case for lack of jurisdiction. This court has jurisdiction pursuant to Title 28 U.S.C. § 1291 and Title 28 U.S.C. § 1294.

## STATEMENT OF THE ISSUES

I.-    8 U.S.C. § 1503 (a) is not subject to a jurisdictional five-year filing period but is a claim processing rule subject to equitable tolling. See *Sarabia v. Noem*, 149 F.4th 554 (5th Cir. 2025); *Santos-Zacaria v Garland*, 598 U.S. 411(2023) and *Riley v. Bondi*, 606 U.S. 259 (2025).

    a.-    8 U.S.C. § 1503 (a)'s five-year filing period is not jurisdictional.

    b.-    8 U.S.C. § 1503 (a)'s five-year filing period is a claim processing rule subject to equitable tolling.

II.-    Hector Cortez's filing was within the five-year filing period of the final administrative denial.

III.-    No "Final Administrative Denial" Occurred Under § 1503(a), So the Five-Year Limitations Period Never Began.

    a.-    If the proper ground was not alleged in the letter denying Cortez' Passport Application—that the ground for denial was that: "he is not a

1

national of the United States,…"—then the five-year period never starts and there is no adequate relief pursuant to 8 USC § 1503(a) but there is an adequate APA claim available. See *Cambranis v. Blinken*, 994 F.3d 457, 464 fn. 7 (5th Cir. 2021), mentioning *Saleh v. Pompeo*, 393 F. Supp. 3d 172, 180 (E.D.N.Y. 2019) without deciding the issue.

b.-    Interpreting 8 USC § 1503(a) to mean the "first" final administrative denial for purposes of the five-year statute of limitations, the way that at first glance the Fifth Circuit might have done in *Gonzalez v. Limon*, 926 F.3d 186, 189 (5th Cir. 2019) is an unconstitutional application of the law that is in direct conflict with the Fourteenth Amendment to the U.S. Constitution. *Marbury v. Madison*, 5 U.S. 137, 177-178 (1803) says that when a law created by Congress is in conflict with the Constitution it is the providence of the Courts to resolve the matter and resolve it in favor of the Constitution. However, the Fifth Circuit has clarified that "[w]hen we held in Gonzalez that § 1503(a) only permits suits following the first final administrative denial, we did not mean the very first time an appeal could possibly be filed. We sought to prevent duplicative applications for the same relief from reopening the courthouse doors upon denial." See *Sarabia v.*

2

*Noem*, 149 F.4th 554 (5th Cir. 2025). Limiting *Gonzalez v. Limon* in this way cures the constitutional defect.

c.-    The District Judge erred in in his assertion that it is well established elsewhere that a denial of a passport for any reason, including "lack of evidence," is "necessarily on the ground" that he "had not proved he was such a national" for the purposes of 8 U.S.C. §1503(a).

## STATEMENT OF THE CASE

Appellant, Hector Cortez, has a contemporaneously filed birth record in the form of a birth certificate issued by the state of Texas that was recorded on February 14, 1977, which was filed within three days of his birth. See ROA.15. The State of Texas has not made any determination that the birth certificate in is invalid nor has it attached any addendum that questions the validity of this document. The State of Texas has not issued a ruling or made any determination that Appellant should not be issued a birth certificate by the State of Texas. The birth certificate issued by the state of Nuevo Leon in Mexico is a delayed birth certificate and was not contemporaneously filed. The Mexican Birth Certificate was recorded on April 21, 1977, a little more than a month after the Texas birth certificate was filed.

Appellant applied for a passport and received multiple denials from 2013 to 2024 for his passport applications. The letter dated April 29, 2013, stated that the

3

passport application was denied because they did not receive a response for the additional identifying information previously requested. See ROA.53. The letter dated March 17, 2015, states that Appellant did not submit sufficient documentation to support by a preponderance of the evidence that he was born in the United States and "therefore, [the Department] is unable to determine that [Appellant] is entitled to a passport and [his] application is denied." See ROA.109. The letter dated February 27, 2020, stated that Appellant was ineligible to receive a U.S. Passport because he owed child support payments. See ROA.35. In this instance, the Department of State made a determination that the application was denied based on 22 C.F.R. § 51.60 (a)(2). See ROA.35. Finally, the letter dated August 29, 2024, states that the original denial dated April 8, 2024, stands because the "documentation submitted is still not sufficient to establish by a preponderance of the evidence that [Appellant] was born in the United States." See ROA.17.

On January 14, 2025, the Appellant filed his Petition for Mandamus and Declaratory Judgement. On May 29, 2025, the Appellee filed a Motion to Dismiss.

A response to the Motion to Dismiss was filed by Appellant on June 18, 2025. The District Court issued a "Memorandum Opinion and Order" granting Motion to Dismiss Appellant's Petition based on lack of jurisdiction because, among other reasons, it determined that 8 U.S.C. § 1503(a) five-year period for filing was jurisdictional. On August 13, 2025, Appellant filed his Notice to Appeal (NOA), and

the present case is pending in this Court.

## SUMMARY OF THE ARGUMENT

This case involves a "Memorandum Opinion and Order", granting the Appellee's Motion to Dismiss and thereby dismissing the case for lack of jurisdiction. Because this case involves a dismissal for lack of subject-matter jurisdiction it should be reviewed "de novo."

The district court erred in treating § 1503(a)'s five-year time bar as jurisdictional. A close reading of the statutory text, reinforced by controlling Supreme Court precedent and the Fifth Circuit's recent decision in *Sarabia v. Noem*, confirms that the provision is a claims-processing rule subject to equitable tolling.

If it was to be assumed that the five-year period began earlier, equitable tolling will still apply. The Supreme Court presumes deadlines are subject to tolling unless Congress clearly forbids it.

The Government relies on earlier ambiguous passport denials, specifically those in 2013, 2015, and 2020, as triggering the five-year clock. But courts have long recognized that only a final denial suffices.

No "Final Administrative Denial" Occurred Under § 1503(a), So the Five-Year Limitations Period Never Began.

There are four elements that must be met for a claim to be brought forth by a person under 8 U.S.C. § 1503(a): 1) a person must bring this action within the statute

of limitations; 2) a person must be within the United States; 3) a person must claim a right or privilege as a national of the United States, and 4) such right or privilege was denied upon the ground that he is not a national of the United States. See 8 U.S.C. § 1503(a). When interpreting § 1503(a), this Court should apply traditional canons of statutory construction.

Interpreting 8 USC § 1503(a) to mean the "first" final administrative denial for purposes of the five-year statute of limitations, the way that at first glance the Fifth Circuit might have done in *Gonzalez v. Limon*, 926 F.3d 186, 189 (5th Cir. 2019) is an unconstitutional application of the law that is in direct conflict with the Fourteenth Amendment to the U.S. Constitution. *Marbury v. Madison*, 5 U.S. 137, 177-178 (1803) says that when a law created by Congress is in conflict with the Constitution it is the providence of the Courts to resolve the matter and resolve it in favor of the Constitution. However, the Fifth Circuit has clarified that "[w]hen we held in *Gonzalez* that § 1503(a) only permits suits following the first final administrative denial, we did not mean the very first time an appeal could possibly be filed. We sought to prevent duplicative applications for the same relief from reopening the courthouse doors upon denial." See *Sarabia v. Noem*, 149 F.4th 554 (5th Cir. 2025). Limiting *Gonzalez v. Limon* in this way cures the constitutional defect.

6

The District Judge further erred in in his assertion that it is well established elsewhere that a denial of a passport for any reason, including "lack of evidence," is "necessarily on the ground" that he "had not proved he was such a national" for the purposes of 8 U.S.C. §1503(a).

In this case there are "Qualitative Differences" that make *Villarreal Salinas v. Limon*, 549 F.Supp.3d 624 (S.D. Tex. 2021) and *Vasquez v. Pompeo*, 467 F. Supp. 3d 466 (S.D. Tex. 2020) applicable. The District Court erred in its analysis of what constitutes a qualitatively different application for a passport. The court also erred by failing to analyze each individual denial of Appellant's passport applications, including the specific basis for each denial and the factual differences among the applications.

The District Court did not address the Constitutional arguments in this case. This case should also be remanded so that such arguments may be properly addressed by the District Court. At the very least the District Court should have discussed the Constitutional issues and why they are not within the Jurisdictional limits of the Court.

## **ARGUMENT**

**Standard of Review:**

This case involves a "Memorandum Opinion and Order", granting the Appellee's Motion to Dismiss and thereby dismissing the case for lack of

7

jurisdiction. Because this case involves a dismissal for lack of subject-matter jurisdiction it should be reviewed "de novo." See *Sarabia v. Noem*, 149 F.4th 554, 561 (5th Cir. 2025) and *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 765 (5th Cir. 2011). This case involves Constitutional issues and questions of law all which are also reviewed "de novo." See *United States v. Palazzo, M.D.*, 558 F.3d 400, 403-404 (5th Cir. 2009); *Jaco v. Garland*, 24 F.4th 395, 401 (5th Cir. 2021). Subject-matter jurisdiction presents a question of law that this court reviews de novo. *Hotze v. Burwell*, 784 F.3d 984, 990 (5th Cir. 2015). Issues of statutory interpretation are also reviewed de novo. See *United States v. Arrieta*, 862 F.3d 512, 514 (5th Cir. 2017). This case should be reviewed de novo.

I.-    8 U.S.C. § 1503 (a) is not subject to a jurisdictional five-year filing period but is a claim processing rule subject to equitable tolling. See *Sarabia v. Noem*, 149 F.4th 554 (5th Cir. 2025); *Santos-Zacaria v Garland*, 598 U.S. 411(2023) and *Riley v. Bondi*, 606 U.S. 259 (2025).

a.-    8 U.S.C. § 1503 (a)'s five-year filing period is not jurisdictional.

The district court erred in treating § 1503(a)'s five-year time bar as jurisdictional. A close reading of the statutory text, reinforced by controlling Supreme Court precedent and the Fifth Circuit's recent decision in *Sarabia v. Noem*, confirms that the provision is a claims-processing rule subject to equitable tolling. See *Sarabia v. Noem*, 149 F.4th 554, 566–68 (5th Cir. 2025). This was the first major error in the district court's reasoning: it relied on

*Gonzalez v. Limon* to classify the deadline as jurisdictional even though *Sarabia*, the later, binding authority, explicitly clarified that *Gonzalez's* statements were dicta and not controlling. See ROA.178.

Section 1503(a) states that a claimant "may institute an action… only within five years after the final administrative denial" and that "jurisdiction over such officials in such cases is conferred upon those courts." 8 U.S.C. § 1503(a). As *Sarabia* explained, this sentence does three things: "(1) a five-year time bar after final administrative denial; (2) venue in the district of the Appellant's residence; and (3) jurisdiction over 'such officials' in specific courts." *Sarabia v. Noem*, 149 F.4th 554, 566–68 (5th Cir. 2025). The jurisdictional clause is set off and refers back only to "such officials," "such cases," and "those courts." *Id.* at 567. Nothing in the text makes the time bar itself jurisdictional. The district court overlooked this textual structure entirely and instead treated the deadline as a limit on its own power, contradicting both *Sarabia* and the Supreme Court's reasoning in *Riley v. Bondi*, which emphasized that a deadline is non-jurisdictional where it "provides no directives to courts." 145 S. Ct. 2190, 2202 (2025).

*Sarabia* specifically noted that "[n]o aspect of the jurisdictional clause clearly refers back to the five-year time bar. That does not amount to a clear statement that the time bar itself is jurisdictional." 149 F.4th at 567. This grammatical and textual analysis tracks Scalia & Garner's "whole-text" and "clear antecedent" canons: the

9

phrases "such officials," "such cases," and "those courts" each have logical referents, but none ties to the five-year limit. See Antonin Scalia & Bryan A. Garner, *Reading Law* 56–58, 144–46 (2012). Reading the statute otherwise would violate the Canon Against Surplusage, because it would render meaningless Congress's express limitation that the denial must be "upon the ground" of non-nationality. *Id.* at 174–79. The Government may argue that *Gonzalez v. Limon*, 926 F.3d 186 (5th Cir. 2019), held the time bar jurisdictional. But *Sarabia* squarely clarified that *Gonzalez*'s language was dicta. 149 F.4th at 566. The district court nevertheless treated *Gonzalez* as binding and concluded that "'the final administrative denial' means the first final administrative denial." See ROA.178. That was its second major error, because § 1503(a) never uses the word "first," and nothing in the statute ties jurisdiction to the earliest denial. See ROA.178. Courts must apply the Supreme Court's "clear statement" rule, not assume jurisdictional effect from mere proximity.

In *Boechler, P.C. v. Comm'r*, 596 U.S. 199 (2022), the Court held that a tax deadline, though in the same sentence as a jurisdictional clause, was not jurisdictional. The Court explained that "[a] requirement does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions." Id. at 206–07. Similarly, in *Riley v. Bondi*, the Court held that the 30-day deadline in 8 U.S.C. § 1252(b)(1) was a claims-processing rule, not jurisdictional, because it did not speak to the power of the courts. *Riley*, 145 S. Ct.

10

at 2202. Here, the district court also erred in its treatment of *Riley v. Bondi*. It dismissed *Riley* in a single sentence and concluded the case "did not alter the Court's analysis" because the statutory language there was "different." See ROA.180. But *Riley's* core principle applies directly: a filing period is not jurisdictional absent a clear statement tying the deadline to the court's power. Section 1503(a) contains no such clear statement. *Riley* is therefore directly on point, and the district court's refusal to apply it constitutes a third reversible error. This mistake is particularly glaring given that *Sarabia* itself relied on *Riley* and *Boechler, P.C. v. Commissioner*, 596 U.S. 199 (2022), to reaffirm that "it matters not" that a deadline appears in the same provision even the same sentence as a jurisdictional clause. 149 F.4th at 567–68. The Fifth Circuit emphasized: "It matters not that the jurisdictional grant and filing deadline appear in the same provision, even the same sentence. Indeed, "[a] requirement 'does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions." *Id.* (citing *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 155 (2013)). The "clear tie" the Supreme Court demands is "plainly missing" in § 1503(a). *Id.*

    b.-    8 U.S.C. § 1503 (a)'s five-year filing period is a claim processing rule subject to equitable tolling.

If it was to be assumed that the five-year period began earlier, equitable tolling will still apply. The Supreme Court presumes deadlines are subject to tolling unless Congress clearly forbids it. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96

11

(1990). To obtain tolling, a Appellant must show diligence and extraordinary circumstances. *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016). Both are present here. Appellant repeatedly applied for a passport over a decade, responding to each request for evidence. Furthermore, the State Department never issued a clear denial "upon the ground" that Appellant was not a U.S. national. Instead, it gave ambiguous denials for insufficient evidence or unrelated reasons. See ROA.176–77. (summarizing the 2013, 2015, 2019, and 2024 applications and the Department's repeated RFEs and denials). That ambiguity deprived Appellant of notice and misled him as to when (if ever) the five-year clock began.

Moreover, as *Sarabia* emphasized, courts must not confuse the harshness of a deadline with jurisdictional consequences: "Nor is it relevant that the language defining the procedural requirement is rigid or harsh…. Congress legislates against the backdrop of judicial doctrines creating exceptions and typically expects those doctrines to apply." 149 F.4th at 567 (quoting *Harrow v. Dep't of Def.*, 601 U.S. 472, 483 (2024)). No such tie exists, making tolling appropriate.  To hold otherwise would allow the Government to "run out the clock" by stringing Appellants along, then invoke its own delay to bar judicial review. Such a result would be a travesty of justice which is precisely the inequity equitable tolling is meant to prevent. See *Irwin*, 498 U.S. at 96 ("[F]ederal courts have typically extended equitable relief in cases where the claimant has actively pursued his judicial remedies by filing a

defective pleading during the statutory period, or where he has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.").

II.- Hector Cortez's filing was within the five-year filing period of the final administrative denial.

The Government relies on earlier ambiguous passport denials, specifically those in 2013, 2015, and 2020, as triggering the five-year clock. But courts have long recognized that only a final denial suffices. In *Ling Share Yee v. Acheson*, 214 F.2d 4, 6 (3rd Cir. 1954), the Third Circuit held that a delay attributable to the applicant's failure to supply documents did not constitute a denial at all. That principle squarely applies here. As in *Ling Share Yee*, the Department repeatedly sought additional information and issued communications citing "insufficient evidence," not an express finding that Appellant "is not a national of the United States," as §1503(a) requires. Without such a definitive nationality determination, the five-year period never began. See also *Sarabia v. Noem*, 149 F.4th 554, 567 (5th Cir. 2025) (the statute requires a denial "upon the ground" of non-nationality to trigger §1503(a)).

Even assuming arguendo that one of the prior denials could qualify, the only denial capable of triggering the clock would be the last one, not the first. The Government invokes *Gonzalez v. Limon* for the proposition that a claimant cannot restart the five-year period by filing "duplicative claims." 926 F.3d 186, 190 (5th Cir. 2019). But *Gonzalez* does not hold that the earliest denial necessarily constitutes the

13

"final administrative denial." It holds only that the period cannot be restarted after a true final denial has occurred. *Sarabia* later clarified this exact point: *Gonzalez*'s reference to the "first final administrative denial" was dicta, not a binding interpretation of what constitutes a final administrative denial in the first place. 149 F.4th at 566. Under *Sarabia*, a court must determine which, if any, agency action actually satisfies the statute's requirement that the denial be "upon the ground" of non-nationality only that denial, and not any earlier one, starts the clock.

Here, none of the earlier denials meet that standard. The 2013 letter merely noted missing documentation. The 2015 letter stated DOS was "unable to determine" entitlement to a passport. The 2020 denial rested on a temporary child-support bar unrelated to nationality. And the 2024 denial and readjudication again relied on insufficient evidence rather than a substantive finding of non-nationality. None of these determinations contains the statutory language or the substance required by §1503(a). Thus, under *Sarabia*'s corrected interpretation of *Gonzalez*, there was no prior "final administrative denial" capable of triggering the five-year period. Accordingly, Appellant's filing was timely for two independent reasons: (1) no final administrative denial occurred until the 2024 readjudication, and the complaint was filed well within five years of that decision; and (2) because none of the earlier denials qualify under the statute, the five-year limitations period had not yet begun to run at the time of filing.

14

III.-   No "Final Administrative Denial" Occurred Under 8 U.S.C. § 1503(a), So the Five-Year Limitations Period Never Began.

First the District Court while properly noting that: "The plaintiff is correct that the Fifth Circuit has not directly addressed the argument that Section 1503(a) was not triggered where a denial is not explicitly based on the grounds that an individual was not a national of the United States. *See Cambranis v. Blinken*, 994 F.3d 457, 464 n.7 (5th Cir. 2021)," ROA.179, it also mistakenly pointed out that:

> "However, it is well established elsewhere that a denial of a passport for any reason, including "lack of evidence," is "necessarily on the ground" that he "had not proved he was such a national" for the purposes of the statute. *Chin Chick Ming v. Dulles,* 225 F.2d 849, 853 (9th Cir. 1955); *see also, Yung Jin Teung v. Dulles,* 229 F.2d 244, 246 (2nd Cir.1956), *Lee Wing Hong v. Dulles,* 214 F.2d 753, 754 (7th Cir. 1954); *Jew Jock Koon v. Dulles,* 139 F. Supp. 205, 206 (S.D. Tex. 1955)." See ROA.179.

This represents a mistake because as explained in subsections (a), (b) and (c) below the cases cited by the Court are appropriately applied. The District Court also erred in stating that:

> "Furthermore, according to the plaintiff's exhibits, the Department of State explicitly called into question the plaintiff's nationality based on the location of the plaintiff's birth in 2014. Thus, at least as of 2015 the passport application denial was necessarily on the grounds that the plaintiff was not a national of the United States for the purpose of Section 1503(a)." See ROA.179.

This represents a mistake because the 2015 passport application denial was not "necessarily on the grounds that the plaintiff was not a national of the United

15

States for the purpose of Section 1503(a)." This is because of what is explained in subsections (a), (b) and (c).

Further the District Court wrongfully explains that:

> "Next, the Court turns to whether the denial in 2015 was final for the purposes of Section 1503(a). For an action to be "final" two conditions must be met: ""[f]irst, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Cambranis,* 994 F.3d at 463 n.6 (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.,* 578 U.S. 590, 597 (2016)). First, the denial of an application for a passport or passport renewal where, as here, the State Department's examination, request for further information on two occasions, and denial of the application marked the consummation of the decision-making process regarding the applicant's right to a passport. Second, the action was one by which the plaintiff's right to a passport had been determined. *Cf. id.* ("There is no dispute that DOS's denials of [plaintiff's] passport applications constitute 'final' agency actions.")." See ROA.179-180.

The denials in this case simply do not meet the "final administrative denial" required by 8 U.S.C. § 1503(a), and the District Court is therefore wrong. This is further explained in subsections (a), (b) and (c), as well as other sections of this brief.

a.- If the proper ground was not alleged in the letter denying Cortez' Passport Application—that the ground for denial was that: "he is not a national of the United States,…"—then the five-year period never starts and there is no adequate relief pursuant to 8 USC § 1503(a) but there is an adequate APA claim available. See *Cambranis v. Blinken*, 994 F.3d 457, 464 fn. 7 (5th Cir. 2021), mentioning *Saleh v. Pompeo*, 393 F. Supp. 3d 172, 180 (E.D.N.Y. 2019) without deciding the issue.

There are four elements that must be met for a claim to be brought forth by a person under 8 U.S.C. § 1503(a): 1) a person must bring this action within the statute of limitations; 2) a person must be within the United States; 3) a person must claim a right or privilege as a national of the United States, and 4) such right or privilege was denied upon the ground that he is not a national of the United States. See 8 U.S.C. § 1503(a) and *Saleh v. Pompeo*, 393 F. Supp. 3d 172, 179 (E.D.N.Y. 2019).

When interpreting § 1503(a), this Court should apply traditional canons of statutory construction. As Justice Scalia explained in *Reading Law: The Interpretation of Legal Texts*, courts must interpret statutes according to their plain language, considering the text as a whole and giving effect to every word. The "whole-text canon" requires that statutory provisions be read in context, not in isolation. Here, the government improperly isolates the phrase "final administrative denial" to argue that the limitations period began in 2013, but it ignores the adjacent and equally essential requirement that the denial be "upon the ground that [the Appellant] is not a national of the United States." Under the "Surplusage canon," courts should avoid interpretations that render statutory phrases meaningless or superfluous. The Appellee's reading would effectively nullify this ground-of-denial requirement, contrary to settled interpretive principles.

Moreover, the Government's position violates the omitted-case canon, which provides that courts may not "fill in" mechanisms or triggers that Congress

deliberately chose not to enact. See Scalia & Garner, *Reading Law* 93–94 (2012). Section 1503(a) identifies one, and only one, trigger for the five-year clock: an express denial "upon the ground that he is not a national of the United States." Congress easily could have written the statute to start the period upon "any denial," or upon a denial for "insufficient evidence," or upon "the first denial," but it did not do so. Courts may not supply through interpretation what Congress omitted. By treating ambiguous, evidence-based, or procedural denials as if they were citizenship findings, the Government rewrites §1503(a), adding a limitations trigger that Congress never enacted. Here, nothing in the statute supports the government's effort to trigger the five-year clock based solely on ambiguous or procedural denials that lack a finding of non-nationality. None of the denials that Appellant has received from the State Department were issued on the grounds that he was not a national of the United States. Under §1503(a)'s plain text, that omission is dispositive.

Therefore, in the absence of a final denial stating that the Appellant is not a national of the United States, the limitations period under § 1503(a) should be deemed untriggered or tolled, and judicial review remains available under the APA because the Department's inaction or ambiguous denials constitute a final agency action that effectively denies a statutory right without proper procedural safeguards. See 5 U.S.C. §§ 702, 704; *Saleh v. Pompeo*, 393 F. Supp. 3d 172, 180 (E.D.N.Y. 2019). *Cambranis v. Blinken*, 994 F.3d 457, 464 (5th Cir. 2021) recognizes that the

18

argument herein made—namely that 8 U.S.C. § 1503(a) is not an adequate remedy because the denial letters given to Appellant by the State Department were not on the ground that "he is not a national of the United States"—has not been resolved or addressed by the Fifth Circuit. In *Cambranis* the Court specifically notes that they will not address Cambranis' argument because it was not made before the District Court and therefore it was forfeited, but references that the argument has been entertained by other Federal District Courts such as *Saleh v. Pompeo*, 393 F. Supp. 3d 172, 180 (E.D.N.Y. 2019). *Cambranis v. Blinken*, 994 F.3d 457, 464 fn. 7 (5th Cir. 2021).

   b.-   Interpreting 8 USC § 1503(a) to mean the "first" final administrative denial for purposes of the five-year statute of limitations, the way that at first glance the Fifth Circuit might have done in *Gonzalez v. Limon*, 926 F.3d 186, 189 (5th Cir. 2019) is an unconstitutional application of the law that is in direct conflict with the Fourteenth Amendment to the U.S. Constitution. *Marbury v. Madison*, 5 U.S. 137, 177-178 (1803) says that when a law created by Congress is in conflict with the Constitution it is the providence of the Courts to resolve the matter and resolve it in favor of the Constitution. However, the Fifth Circuit has clarified that "[w]hen we held in *Gonzalez* that § 1503(a) only permits suits following the first final administrative denial, we did not mean the very first time an appeal could possibly be filed. We sought to prevent duplicative applications for the same relief from reopening the courthouse doors upon denial." See *Sarabia v. Noem*, 149 F.4th 554 (5th Cir. 2025). Limiting *Gonzalez v. Limon* in this way cures the constitutional defect.

"The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high

19

appellation, if the laws furnish no remedy for the violation of a vested legal right."

*Marbury v. Madison*, 5 U.S. 137, 163 (1803). This Court has original jurisdiction under the Fifth and Fourteenth Amendments. The Appellee has not made a citizenship or birth determination with respect to the Appellant as required by 8 U.S.C § 1503(a). Specifically, Appellee—The State Department—has not denied the passport application of Appellant on "the ground that he is not a national of the United States...." Pursuant to 22 U.S.C. § 211a, only the U.S. Department of State is authorized to issue passports:

> "The Secretary of State may grant and issue passports... under such rules as the President shall designate and prescribe... and no other entity shall grant, issue, or verify such passports."

Accordingly, the Department bears a non-discretionary duty to adjudicate passport applications in strict accordance with federal law and the U.S. Constitution. Further, under 22 C.F.R. § 53.1(a), it is unlawful for a U.S. citizen to depart from or enter the United States without a valid U.S. passport, unless exempted under 22 C.F.R. § 53.2. Denial of a passport, therefore, directly restricts a citizen's fundamental right to international travel. In this case, the Department of State has refused to issue a passport to the Appellant based on vague and unspecified "conflicting evidence" related to place of birth. For example, in the denial letter provided by the Appellee at ROA.109,  part of the reasoning the State Department gives for denying his passport is: "There is a reason to believe that the birth attendant who filed your birth

20

certificate did so fraudulently and you have not submitted any early public records to support your birth in the United States." Also see ROA.7-8. This reasoning does not comport with the requirement of 8 U.S.C. § 1503(a) because it does not give notice that the denial is a final administrative decision on the ground that Appellant is not a national of the United States. "Reason to believe" that "the birth attendant who filed your birth certificate did so fraudulently" is not only a reason not mentioned in the statute, but it is vague and so imprecise as to not allow for proper notice to anyone on how to proceed. However, under 8 U.S.C. § 1503(a), the Department may only lawfully deny a passport if it formally determines that the applicant is not a national. No such determination has been made here. Instead, the denial was based on ambiguous reasoning and without any conclusive adjudication regarding the Appellant's citizenship. This approach contradicts statutory design. In *Niz-Chavez v. Garland*, 593 U.S. 155, 161 (2021), the Supreme Court emphasized that when Congress sets forth procedural requirements, the government must follow the statute in full. There, the Court rejected the government's piecemeal approach to issuing notices to appear, holding that all statutory elements must be met before the clock could begin. Similarly, § 1503(a) does not authorize the statute of limitations to begin unless the denial expressly states that the person is not a national of the United States. The Department cannot rely on vague or partial denials to trigger a deadline that cuts off the Appellant's access to judicial review. To do so would

21

undermine the rule of law and deny the Appellant meaningful notice of his rights.

Furthermore, the Court in *Niz-Chavez,* reasoned:

> " Admittedly, a lot here turns on a small word. In the view of some, too much. The dissent urges us to overlook the fact Congress placed the singular article "a" outside the defined term in §1229(a)(1).... But that's not how the law is written, and the dissent never explains what authority might allow us to undertake the statutory rearranging it advocates...Not once but twice it seems Congress contemplated "a" single document." *Niz-Chavez v. Garland*, 593 U.S. 155, 161-62 (2021).

For the U.S. Supreme Court statutory reading is an exercise in precision, if the letter "a" can change the outcome of an entire case, it stands to reason that eliminating "upon the ground that he is not a national of the United States", a full phrase in 8 U.S.C. § 1503(a), will not be acceptable. The statute is clear, it requires denial based on non-nationality, and the State Department has not followed this statutory requirement.

This action of denying a passport based on conflicting birth information is a violation of due process as protected by the Fifth Amendment. In *Kent v. Dulles*, 357 U.S. 116 (1958), the Supreme Court stated: "The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law." This constitutional liberty was reaffirmed in *Califano v. Aznavorian*, 439 U.S. 170 (1978), where the Court recognized that restrictions on international travel implicate fundamental rights. Because the Department has failed to provide a lawful basis under 8 U.S.C. § 1503(a) and has imposed a restriction on liberty without due

22

process, its denial is unconstitutional. The Appellant therefore, respectfully requests that this Court compel the District Court to correct the error of not addressing this argument and simply stating that:

> "First, the denial of an application for a passport or passport renewal where, as here, the State Department's examination, request for further information on two occasions, and denial of the application marked the consummation of the decision-making process regarding the applicant's right to a passport. Second, the action was one by which the plaintiff's right to a passport had been determined. *Cf. id.* ("There is no dispute that DOS's denials of [plaintiff's] passport applications constitute 'final' agency actions.")" ROA.179-180.

The District Court here misconstrued the argument and suggests that "[t]here is no dispute that DOS's denials of [plaintiff's] passport applications constitute 'final' agency actions…", but such is the essence of this appeal—the Appellant does not admit, or concede this point. The Appellant is arguing that DOS's denials of [plaintiff's] passport applications do not constitute 'final' agency actions as required by 8 U.S.C. § 1503 (a). The Department of State needs to fulfill its ministerial obligation: either issue the requested passport, or make a formal, reviewable finding of non-citizenship pursuant to federal law.

Furthermore, regarding the Plaintiff's Mandamus Act claim, the Appellee states: "Passport issuance is an expressly discretionary function authorized to the Secretary of State pursuant to 22 U.S.C. § 211a, which provides that '[t]he Secretary of State may grant and issue passports . . . .'" (emphasis added); see also *Haig v.*

23

*Agee*, 453 U.S. 280, 295 n.26 (1981) (noting that use of the word "'may' expressly recognizes substantial discretion"). See ROA.100-101. However, the Government leaves out the second part of 22 U.S.C. § 211a, which provides:

> "by the chief or other executive officer of the insular possessions of the United States, and through the use of Department of State electronic systems, under such rules as the President shall designate and prescribe for and on behalf of the United States, and no other entity shall grant, issue, or verify such passports. Unless authorized by law, a passport may not be designated as restricted for travel to or for use in any country other than a country with which the United States is at war, where armed hostilities are in progress, or where there is imminent danger to the public health or the physical safety of United States travelers."

Even if we agreed that the issuance, granting, and verification of passports is discretionary—which we do not concede—there is no ground for the Government to arbitrarily deny a passport for any reason. They must have a legally grounded purpose. Again, invoking *Dulles*, the Court ruled:

> "We, therefore, hesitate to impute to Congress, when in 1952 it made a passport necessary for foreign travel and left its issuance to the discretion of the Secretary of State, a purpose to give him unbridled discretion to grant or withhold a passport from a citizen for any substantive reason he may choose." *Kent v. Dulles*, 357 U.S. 116, 128 (1958).

Unless Congress has clearly authorized such a denial, the executive cannot restrict this right to travel. The only way to have done this through 8 U.S.C. § 1503(a) was for the State Department to claim that Plaintiff was not a national of the United States. The Appellees attempt to invoke *Haig v. Agee*, 453 U.S. 280, 295 n.26

24

(1981), but this case does not grant them free license to deny a passport application for any reason. Specifically, the Court was referring to a CIA agent who promised to expose CIA agents. This case involved a revocation of a passport based on national security reasons, which may not have a statutory basis, but a reason which the Court accepted as a lawful justification. There is no statutory or Supreme Court precedent authorizing a denial based on conflicting birth information. The Court in *Agee* states:

> "The Passport Act does not, in so many words, confer upon the Secretary a power to revoke a passport. Nor, for that matter, does it expressly authorize denials of passport applications. Neither, however, does any statute expressly limit those powers. It is beyond dispute that the Secretary has the power to deny a passport for reasons not specified in the statutes...the Court recognized congressional acquiescence in Executive policies of refusing passports to applicants 'participating in illegal conduct, trying to escape the toils of the law, promoting passport frauds, or otherwise engaging in conduct which would violate the laws of the United States.' ... the Court held that 'the weightiest considerations of national security' authorized the Secretary to restrict travel to Cuba at the time of the Cuban missile crisis... Agee concedes that, if the Secretary may deny a passport application for a certain reason, he may revoke a passport on the same ground." *Haig v. Agee*, 453 U.S. 280, 290-91 (1981).

The Appellee has not considered that the Court was specifying what extratextual conditions are needed for a proper denial of a passport, and the history the Court cites does not suggest conflicting birth information is enough to deny a passport. More importantly, the U.S. Supreme Court in *Agee* concedes that the Passport Act

does not expressly confer the power to deny; so while the State Department may have discretion to deny for reasons outside of the Passport Act, it still needs to be grounded in a reason—either textual or precedential.

Even if discretion exists, it is not unlimited, and where the statutory and precedential framework prohibits denial absent a legally sufficient justification, the Secretary has a nondiscretionary duty to issue the passport. Mandamus lies to compel the exercise of that duty where the law clearly defines the right.

The Fifth Circuit has interpreted the five-year statutory period from the final administrative decision in 8 U.S.C. § 1503(a) to refer to the first decision made by the agency denying the issuance of the passport. See *Gonzalez v. Limon*, 926 F.3d 186, 189 (5th Cir. 2019). The Fifth Circuit has clarified that "[w]hen we held in *Gonzalez* that § 1503(a) only permits suits following the first final administrative denial, we did not mean the very first time an appeal could possibly be filed. We sought to prevent duplicative applications for the same relief from reopening the courthouse doors upon denial." See *Sarabia v. Noem*, 149 F.4th 554 (5th Cir. 2025). Before we have a first final administrative denial, we must first have a "final administrative denial." In the context of a passport application the Statute, 8 U.S.C. § 1503(a), tells us what makes the decision a "final administrative denial." 8 U.S.C. § 1503(a) states in relevant part: "If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right

26

or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States,…" this is what makes an administrative decision final in the context of a passport application filed within the United States. Further, as discussed above the U.S. Supreme Court in *Niz-Chavez v. Garland*, 593 U.S. 155, 161 (2021) found that the language of the statute matters and words, such as the single article "a" cannot just be ignored. Now if that is the case then it follows that the nonexistence of a word such as "first" is not in the statute then Congress did not mean the "first" of whatever. See *Niz-Chavez v. Garland*, 593 U.S. 155, 161-62 (2021). Allowing any Court to add words not in the statute would make the judiciary a legislature and that also violates the separation of powers created by the United States Constitution. *Marbury v. Madison*, 5 U.S. 137, 177-178 (1803) says that when a law created by Congress conflicts with the Constitution it is the providence of the Courts to resolve the matter and resolve it in favor of the Constitution. Such being the case both the U.S. Constitution and the United States Supreme Court require this Court and the District Court to not add words to a statute that have not been placed there by Congress—regardless of the intent of Congress.

    c.-    The District Judge erred in in his assertion that it is well established elsewhere that a denial of a passport for any reason, including "lack of evidence," is "necessarily on the ground" that he "had not proved he was such a national" for the purposes of 8 U.S.C. §1503(a).

The assertion by the District Judge that "a denial for lack of evidence is necessarily on the ground that he had not proved he was such a national for purposes

of the statute 1503(a)[1]" is overly broad and mischaracterizes both the statutory framework and relevant case law. While *Chin Chick Ming v. Dulles*, 225 F.2d 849, 853 (9th Cir. 1955), *Yung Jin Teung v. Dulles,* 229 F.2d 244, 246 (2nd Cir. 1956), *Lee Wing Hong v. Dulles,* 214 F.2d 753, 754 (7th Cir. 1954), and *Jew Jock Koon v. Dulles,* 139 F. Supp. 205, 206 (S.D. Tex. 1955) discuss burdens of proof in nationality claims, the holdings in these cases do not mandate that every denial for lack of evidence is automatically a finding that the applicant failed to prove nationality under §1503(a). *Chin Chick Ming v. Dulles*, 225 F.2d 849, 853 (9th Cir. 1955) does not say "for any reason" but it does mention that lack of evidence is necessarily on the ground that the person is not a national of the United States. However, such statement is more in line with dicta because the reason that the Court found for there to be a denial was that it "construed the words 'right or privilege as a national of the United States'...to cover the right to prompt disposition of a claimed citizens' application." The observation about the lack of evidence was not necessary to the disposition of the case. As a matter of fact, the Second circuit in *Yung Jin Teung v. Dulles,* 229 F.2d 244, 246 (2nd Cir. 1956) said that "a passport may be denied on the statutory ground by a refusal to determine a claim of citizenship for an unreasonable length of time." (The *Yung Jin Teung* Court cites to *Chin Chick Ming* for this proposition, showing that the rest of the mentioned reasons was dicta.)

---

[1] ROA.179.

First, 8 U.S.C. §1503(a), requires that a person be within the United States, claiming a right or a privilege as a national of the United States, and be denied such right or privilege by a department or independent agency, or official thereof, upon the ground that he is not a national of the United States. In *Chin Chick Ming v. Dulles*, *Yung Jin Teung v. Dulles*, and *Lee Wing Hong v. Dulles* the applicants were outside of the United States requesting passports to enter the United States. This fact makes these cases quite different from Appellant's case and as it is written today the statute would not apply. In *Chin Chick Ming v. Dulles* specifically, the applicant was outside the United States when they requested a passport, and it had been at least 15 months when the suit was filed, and they had yet to receive any disposition regarding the request. See *Chin Chick Ming v. Dulles*, 225 F.2d 849, 852 (9th Cir. 1955). This point was the scope of the issue, that "the failure of Congress to supply funds for employing qualified persons to give such prompt consideration to the applications of claim citizens does not deprive appellants of their right to such a prompt consideration." See *Chin Chick Ming v. Dulles*, 225 F.2d 849, 853 (9th Cir. 1955). The denial of prompt action was the issue in *Chin Chick Ming*, the analysis of the different types of denials after that ruling are dictum and are not necessary to the decision. This makes that analysis not precedential. See *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004), and *Sarabia v. Noem*, 149 F.4th 554, 564 (5th Cir. 2025).

29

Furthermore, it does not make sense to claim that every denial for lack of evidence is a denial upon the ground that the applicant is not a national of the United States. Such a reading would make the actual wording of the statute meaningless. Denials for lack of evidence could be based on deficiencies unrelated to nationality per se. Such as a denial due to not having the proper documentation for a release of retroactively owed child support, a denial from procedural missteps, a denial due insufficient documentation, or a denial for failure to meet other statutory criteria, is not exclusively the failure to prove nationality status. See 22 CFR § 51.60. *Chin Chick Ming*, *Yung Jin Teung*, *Lee Wing Hong*, and *Jew Jock Koon*, confirm that courts review the sufficiency of evidence, but they do not hold that every evidentiary denial equates to an adjudication on nationality. In *Yung Jin Teung v. Dulles*, 229 F.2d 244, 246 (2nd Cir. 1956), and *Lee Wing Hong v. Dulles*, 214 F.2d 753, 754 (7th Cir. 1954), the decisions focus on whether the applicant met the burden of proof, but they do not foreclose the possibility of denials on other grounds.

Moreover, administrative and judicial decisions often distinguish between denials based on lack of evidence and those based on substantive findings regarding nationality. It is not mentioned if in *Jew Jock Koon v. Dulles* the applicants were within the United States or not, however; in this case the issue was due to lack of identifying evidence. In *Jew Jock Koon*, the "evidence indicated that he was not the person he purported to be." See *Jew Jock Koon v. Dulles,* 139 F. Supp. 205, 206

30

(S.D. Tex. 1955). The court does emphasize the need for sufficient proof, but it did not declare that all evidentiary denials must be construed as findings specifically on the statutory nationality requirement. This is limited in scope to evidentiary denials due to a failure to prove identity. In our present case the denial was not because Appellant failed to prove his identity, therefore *Jew Jock Koon* does not apply. As such a blanket statement that all evidentiary denials are denials on the grounds of nationality misapplies the case law and overlooks the nuances of both statutory interpretation and judicial reasoning.

IV.    In this case there are "Qualitative Differences" that make *Villarreal Salinas v. Limon*, 549 F.Supp.3d 624 (S.D. Tex. 2021) and *Vasquez v. Pompeo*, 467 F. Supp. 3d 466 (S.D. Tex. 2020) applicable.

The District Court erred in its analysis of what constitutes a qualitatively different application for a passport. The court also erred by failing to analyze each individual denial of Appellant's passport applications, including the specific basis for each denial and the factual differences among the applications. The Court limited their analysis to the following narrow observation:

> "While other courts in the Southern District of Texas have found that subsequent applications may be 'qualitatively different' and 'restart the statute of limitations,' that is not the case here. *Villarreal Salinas v. Limon*, 549 F. Supp.3d 624, 630 (S.D. Tex. 2021); see also *Vasquez v. Pompeo*, 467 F. Supp. 3d 466, 473 (S.D. Tex. 2020). In those cases, there had been an intervening determination that the plaintiffs were United States citizens or nationals. *Villarreal Salinas*, 549 F. Supp. 3d at 626–27 (explaining that an immigration court had subsequently found that the

31

plaintiff was 'clearly and beyond a doubt admissible as having been born in the United States.')." ROA.180.

This observation implies that for an application to be qualitatively different there must be an intervening determination that the applicant is a United States citizen or national. This characterization is incomplete and misapplies the holdings of both cases. *Villarreal Salinas* and *Vasquez* do not stand for the proposition that an intervening citizenship determination is a necessary prerequisite for a subsequent passport application to be "qualitatively different." Rather, those courts examined the individualized reasons for each denial and recognized that materially distinct grounds for denial may create a new cause of action under 8 U.S.C. § 1503(a). The District Judge here failed to conduct that required analysis. Furthermore, such analysis should be conducted under the Fifth Circuit's clarification of *Gonzalez v. Limon*, 926 F.3d 186, 189 (5th Cir. 2019) to the effect that "[w]hen we held in *Gonzalez* that § 1503(a) only permits suits following the first final administrative denial, we did not mean the very first time an appeal could possibly be filed. We sought to prevent duplicative applications for the same relief from reopening the courthouse doors upon denial." See *Sarabia v. Noem*, 149 F.4th 554 (5th Cir. 2025).

Appellant has submitted multiple passport applications since 2013, and each denial was based on different and shifting grounds. The denials ranged from assertions that Appellant failed to provide additional requested information or documents, to a determination of ineligibility under 22 C.F.R. § 51.60(a)(2), to most

recently conclusions that Appellant had not submitted sufficient evidence to establish birth in the United States. See ROA.17, 35, 53, and 109. Appellant has consistently provided documentation that he contends was sufficient under governing law and was repeatedly and unlawfully denied a passport. Moreover, new and additional evidence was provided with each request.

Appellant had a valid United States passport in 2013. The issue arose during an out-of-country trip in which Appellant thought he had lost his passport. While out of the country Appellant reported his passport as lost and requested a new one. This led to the denial on April 29, 2013, which stated only that the Department of State had not received additional requested materials. See ROA.53. Again, Appellant was out of the country when this request was made, and he eventually found his passport and was able to return home. He reapplied for a passport and was denied on March 17, 2015. See ROA.109. This denial was issued because Appellant had not proved by a preponderance of the evidence through documentary evidence his United States citizenship or nationality. See ROA.109. Specifically, because he did not provide early public records nor records that support his mother's physical presence in the United States at the time of his birth. See ROA.109. However, Appellant applied for a passport a third time. This time Appellant was denied a passport solely because he was in child support arrears. See ROA.35. The denial issued on February 27, 2020, was based upon 22 C.F.R. § 51.60(a)(2). See ROA.35. It was not until after the

33

arrears issue was fixed that Appellant was again able to reapply for a passport. This led to the August 29, 2024, denial which stated that the additional "documentation submitted is still not sufficient to establish by a preponderance of the evidence that [Appellant] was born in the United States," and that the original denial dated April 8, 2024, stands. See ROA.17. The District Judge failed to distinguish between the determinations and improperly treated all the denials as identical for purposes of the statute of limitations analysis. By the timeline it is clear that Appellant was working diligently to provide all the documentation requested of him and that it was not until he completely exhausted all remedies that he requested the Writ of Mandamus and Declaratory Judgement that led to this appeal. The denial issued on February 27, 2020, is qualitatively different from the denial issued on March 17, 2015, and is again qualitatively different from the denial on August 29, 2024. This makes the denial issued on August 29, 2024, the final administrative denial—if there is to be a final administrative denial.

Because each denial rested on different grounds, several of which did not constitute a § 1503(a) determination at all, the court erred in concluding that the applications were not qualitatively different. A proper analysis would have evaluated each denial independently to determine whether it (1) constituted a final administrative determination under § 1503(a), and (2) was it "qualitatively different" so as to give rise to a new and timely cause of action.  See *Tristan v. United States*

*Dep't of State*, No. 4:25 CV 255 JMB, 2025 U.S. Dist. LEXIS 204194, *10 (E.D. Mo. 2025) (Discussing with approval the *Sarabia v. Noem*, 149 F.4th 554 (5ᵗʰ Cir. 2025), and indicating that the five-year time "clock may be reset, however, if subsequent applications are qualitatively different; and, some courts have found that providing additional and new evidence can render an application different and can lead to a new five-year limitations period.") The District Court's failure to conduct an independent analysis of each denial constitutes reversible error.

V-    The Constitutional arguments in this case were not addressed by the District Court. This case should also be remanded so that such arguments may be properly addressed by the District Court.

The District Court does not address the Constitutional arguments involved in this case. Appellant addresses the Constitutional argument at: ROA.4-5, 9, 11-12, 127-132, 135-136, 138, and 143.

This action of denying a passport based on conflicting birth information is a violation of due process as protected by the Fifth Amendment. In *Kent v. Dulles*, 357 U.S. 116 (1958), the Supreme Court stated: "The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law." This constitutional liberty was reaffirmed in *Califano v. Aznavorian*, 439 U.S. 170 (1978), where the Court recognized that restrictions on international travel implicate fundamental rights. Because the Department has failed to provide a lawful basis under 8 U.S.C. § 1503(a) and has imposed a restriction on liberty without due

process, its denial is unconstitutional. The Appellant therefore respectfully requests that this Court compel the Department of State to fulfill its ministerial obligation: either issue the requested passport, or make a formal, reviewable finding of non-citizenship pursuant to federal law.

The Department of State believes that it has no Constitutional duty to issue a passport "because passport issuance is an expressly discretionary function authorized to the Secretary of State...." See ROA.103-106. and they also selectively attribute the Plaintiff's constitutional argument in the Tenth Amendment when he has also based his claims on the 5th Amendment Due Process clause. See ROA.12-13,127, and 129. The reasoning the State Department proposes is flawed because the constitution does not end where discretion begins. The Department of State may be correct that it has discretion to deny or issue a passport; however, their reasoning must have a lawful basis. To illustrate, police officers have broad discretion to make an arrest or not and that discretion does not mean they have the right to arrest anyone for any reason. This is due to the 5th amendment's due process clause and the same applies to the Department of State, whether they have discretion or not. In fact, the State Department agrees as it says:

> "Even if the federal government were required to give full faith and credit to the Texas birth certificate, it would not preclude the federal government's authority over questions of citizenship, which were expressly and solely delegated to Congress under the Fourteenth Amendment. Therefore, Plaintiff's full faith and credit claim is without merit and should also be dismissed." See ROA.104.

36

The Department's own statement concedes that it holds exclusive authority over questions of citizenship. The Appellant does not agree that the State Department holds unfettered power over questions of citizenship, not even as part of the Federal Government, because the Federal Government's authority—exclusive or not—is subject to the Constitution. The Department's attempt to use that authority as a shield against due process is prohibited by the U.S. Constitution. Federal control over citizenship matters does not permit arbitrary or indefinite denials of passport applications by U.S. citizens. Accordingly, the Appellant requests that this Court sent this case back to the District Court to properly analyze these issues and if appropriate to compel the Department to fulfill its statutory and constitutional duty to either issue the passport or render a reviewable determination of non-citizenship.

Pursuant to 22 U.S.C. § 211a, only the U.S. Department of State is authorized to issue passports, "The Secretary of State may grant and issue passports... under such rules as the President shall designate and prescribe... and no other entity shall grant, issue, or verify such passports." Accordingly, the Department bears a non-discretionary duty to adjudicate passport applications in strict accordance with federal law and the U.S. Constitution. Further, under 22 C.F.R. § 53.1(a), it is unlawful for a U.S. citizen to depart from or enter the United States without a valid U.S. passport, unless exempted under 22 C.F.R. § 53.2. Denial of a passport, therefore, directly restricts a citizen's fundamental right to international travel.

37

In this case, the Department of State has refused to issue a passport to the Appellant based on vague and unspecified "conflicting evidence" related to place of birth. For example, in the denial letter provided by the Appellee, part of the reasoning the State Department gives for denying his passport is: "There is a reason to believe that the birth attendant who filed your birth certificate did so fraudulently and you have not submitted any early public records to support your birth in the United States." This reasoning does not comport with the requirement of 8 U.S.C. § 1503(a) because it does not give notice that the denial is a final administrative decision on the ground that Appellant is not a national of the United States. "Reason to believe" that "the birth attendant who filed your birth certificate did so fraudulently" is not mentioned in the statute, and it is so vague and imprecise as to not allow for proper notice to anyone on how to proceed. However, under 8 U.S.C. § 1503(a), the Department may only lawfully deny a passport if it formally determines that the applicant is not a national. No such determination has been made here. Instead, the denial was based on ambiguous reasoning and without any conclusive adjudication regarding the Appellant's citizenship. At the very least the District Court should have discussed the Constitutional issues and why they are not within the Jurisdictional limits of the Court when article III of the United States Constitution in section 1 states: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time

38

to time ordain and establish." And article III of the U.S. Constitution in section 2 further states: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;". Furthermore, the U.S. Supreme has said:

> "It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each.
>
> So if a law be in opposition to the constitution; if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the constitution; or conformably to the constitution, disregarding the law; the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.
>
> If then the courts are to regard the constitution; and the constitution is superior to any ordinary act of the legislature; the constitution, and not such ordinary act, must govern the case to which they both apply." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177-178 (1803).

Considering that the Constitution clearly describes three separate but equal branches of Government, and that it places on the judiciary the duty to interpret the Constitution, it is imperative that this Court require the District Court to properly consider the Constitutional arguments herein made.

## <u>CONCLUSION</u>

The District Court erred in granting the Appellees Motion to Dismiss for lack of subject matter Jurisdiction. The District Court's determination that 8 U.S.C. §

1503(a) five-year limitation period to file a claim in the District Court is jurisdictional is wrong. The five-year period is not jurisdictional. See *Sarabia v. Noem*, 149 F.4th 554, 566–68 (5th Cir. 2025). Since the 8 U.S.C. § 1503(a) five-year limitation period to file a claim is not jurisdictional equitable tolling applies, and the District Court wrongfully granted a dismissal with considering the equitable tolling issue. The District Court wrongfully determined that the five-year period to file a claim had actually started pursuant to 8 U.S.C. § 1503(a). *Gonzalez v. Limon*, 926 F.3d 186 (5th Cir. 2019) applies with the limitations placed by *Sarabia v. Noem*, 149 F.4th 554 (5th Cir. 2025), otherwise *Gonzalez v. Limon* might be unconstitutional. Furthermore, the District Court erred in not addressing the Constitutional arguments present by Appellant. This case needs to be remanded to the District Court with instructions that it follow the determinations and procedures set by the Fifth Circuit Court of Appeals.

SUBMITTED BY:
/S/Roberto M. Hinojosa
Roberto M. Hinojosa
Texas State Bar Number: 24043730
2020 Southwest Fwy. (U.S. 59) Ste. 220
Houston, Texas 77098
(713) 665-5060
Counsel for Appellant

## CERTIFICATE OF SERVICE

I certify that on November 14, 2025, a true and correct electronic copy of the foregoing Appellant's Brief has been sent via the Pacer Service to Jennifer Bowen, Anthony Payne, and Anna Dichter of U.S. Department of Justice Washington, DC- Civil Division- Office of Immigration Litigation, P.O. Box 878, Ben Franklin Station, Washington D.C., 20044, attorneys for Appellee.

/S/Roberto M. Hinojosa
Roberto M. Hinojosa
Attorney for Appellant

41

**CERTIFICATE OF COMPLIANCE**

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 10473 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using Microsoft Word Office in font size 14 Times New Roman.

/S/Roberto M. Hinojosa